**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 6 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| In re: POINT 360,<br><br>      Debtor.<br>_____<br><br>POINT 360, a California corporation,<br><br>      Appellant,<br><br>  v.<br><br>MEDLEY CAPITAL CORPORATION, a Delaware corporation; MEDLEY OPPORTUNITY FUND II, LP, a Delaware limited partnership,<br><br>      Appellees. | No. 23-55585<br><br>D.C. No. 2:21-cv-05815-JAK<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Submitted June 4, 2024**
Pasadena, California

---

      \*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      \*\*     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: M. SMITH and BADE, Circuit Judges, and FITZWATER,*** District Judge.

Point.360 appeals the district court's order affirming the bankruptcy court's grant of summary judgment to Medley Capital Corporation and Medley Opportunity Fund II (collectively referred to herein as Medley). We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and we affirm. Because the parties are familiar with the facts, we do not recount them here except as necessary to provide context.

1. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the bankruptcy court did not abuse its discretion when it took judicial notice of the filings on its own dockets.

2. After a party moves for summary judgment on the basis that the nonmoving party cannot succeed at trial because of a "failure of proof concerning an essential element of the nonmoving party's case," the nonmoving party must come forward with such proof to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Accordingly, the bankruptcy court did not err when it shifted the burden of production to Point.360 after Medley argued in its summary judgment

***  The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

2

motion that Point.360 was unable to establish a key element of its mandatory subordination claim pursuant to 11 U.S.C. § 510(b).

3.      Claims against a debtor's estate must be subordinated pursuant to § 510(b) if "there exists some nexus or causal relationship between the claim and the purchase of securities." *In re Am. Wagering, Inc.*, 493 F.3d 1067, 1072 (9th Cir. 2007) (internal quotation marks and citations omitted).  However, the subordination required by § 510(b) "stops short of encompassing every transaction that touches on or involves stock in a corporation." *In re Khan*, 846 F.3d 1058, 1064 (9th Cir. 2017). Where a party does not seek to be a shareholder in a debtor corporation, but, for instance, uses the value of the stock as a basis to measure and calculate the compensation owed to that party, that party is a creditor, as opposed to an equity investor. *Id.* at 1064–65.

On summary judgment, Medley argued that Point.360 could not show that Medley's claims for repayment of the term loans it previously extended to Point.360 (the Term Loans) arose from the purchase or sale of equity securities.  In response, Point.360 pointed to a single piece of evidence in the record.  Specifically, Point.360 cited the statement in the loan agreement that the warrants—which merely gave Medley the right to purchase Point.360's common stock at a specific price in the future—were issued "[i]n consideration for the Term Loans."  The question for the bankruptcy court, then, was whether that contractual language, by itself, was

3

sufficient to carry Point.360's evidentiary burden to show a triable issue of fact over whether Medley's secured debt claims arising under the Term Loans were sufficiently connected to the purchase or sale of securities such that they should be subordinated pursuant to § 510(b).

Our decision in *Kahn* shows that such language was insufficient. If such language were enough to render Medley's issuance of the Term Loans an equity investment, then every secured loan agreement that also provides for the issuance of company stock upon the lender's election would require subordination. Such a result would contravene our statement in *Kahn* that subordination pursuant to § 510(b) "stops short of encompassing every transaction that touches on or involves stock in a corporation." 846 F.3d at 1064.

Such a result would also improperly allocate the risks between creditors and equity investors, *see Wagering*, 493 F.3d at 1071–72, especially if the lender never chooses to exercise the warrants, as was the case here. By including the warrants as additional consideration for the Term Loans, the loan agreement presented Medley the opportunity to take a greater risk in exchange for potentially greater rewards by exercising the warrants, but the fixed repayment plan for the Term Loans guaranteed a lesser reward in exchange for less risk. To subordinate a claim for repayment of secured term loans simply because the lender had the option to make an equity play in the future would "unfairly shift to creditors risks associated with stock

4

ownership." *In re Tristar Esperanza Props., LLC*, 782 F.3d 492, 496 (9th Cir. 2015); *see In re Betacom of Phx., Inc.*, 240 F.3d 823, 829 (9th Cir. 2001) (observing that § 510(b) subordinates claims "arising from" qualifying securities because "[s]hareholders expect to take more risk than creditors in return for the right to participate in firm profits").

This would be a different case if Medley had filed proofs of claim seeking to recover its interests arising under the now-cancelled warrants. But Medley never did so. Rather, Medley filed proofs of claim showing only that it had extended the Terms Loans to Point.360 with specific repayment obligations and that those obligations were secured by collateral. The bankruptcy court approved a reorganization plan, proposed by Point.360, in which these secured obligations were reinstated. To subordinate and ultimately disallow such claims now would vitiate that very plan.

Accordingly, the bankruptcy court correctly held as a matter of law that the mere language cited by Point.360 was insufficient to create a triable issue of fact over whether Medley's secured debt claims arising under the Term Loan Agreement were sufficiently connected to the purchase of securities such that they should be subordinated pursuant to 11 U.S.C. § 510(b).

4. As Point.360 concedes, without triable issues of fact on its mandatory subordination claim, Point.360's other claims for disallowance pursuant to 11 U.S.C.

5

§ 502(b)(1) and avoidance pursuant to 11 U.S.C. § 506(d) necessarily fail as well.

5.    We need not reach the issue of judicial estoppel raised on appeal because Point.360's mandatory subordination, disallowance, and avoidance claims fail on the merits, regardless of judicial estoppel. The bankruptcy court's judicial estoppel determination was merely an alternative basis for justifying the grant of summary judgment to Medley.

**AFFIRMED.**